1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEASTER FOSTER,**<br><br>Petitioner,<br><br>**v.**<br><br><br>**JAMES D. HARTLEY, Warden,**<br><br>Respondent. | 1:12-cv-01282 LJO MJS HC<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(Doc. 19)** |

18     Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas

19 corpus pursuant to 28 U.S.C. § 2254.

20 I.     **PROCEDURAL BACKGROUND**

21     Petitioner is currently in the custody of the California Department of Corrections

22 and Rehabilitation following his October 14, 1994 conviction of second degree murder.

23 (See Pet., ECF No. 1.) He currently is serving a sentence of fifteen years to life in prison.

24 On that conviction (Id.)

25     Petitioner filed the instant federal habeas petition on August 7, 2012. During a

26 search on April 5, 2011, correctional officers found a cell phone in Petitioner's mattress

27 and a cell phone charger under his bunk. At the disciplinary hearing on April 11, 2011,

28

1  Petitioner was found guilty of possession of a cell phone, and assessed a 30-day
2  forfeiture of credit and loss of other privileges. Petitioner alleges that the California
3  Department of Corrections and Rehabilitation issued the disciplinary violation without
4  sufficient evidence of his guilt and that the hearing violated his constitutional right to
5  equal protection as other inmates were not found guilty of similar offenses.

6  On November 17, 2011, Petitioner filed a habeas petition in the Kings County
7  Superior Court. The petition was denied in a reasoned decision on January 9, 2012.
8  (Answer, Exs. 1-2.)

9  On February 29, 2012, Petitioner filed a writ of habeas in the California Court of
10  Appeal for the Fifth District. The appellate court summarily denied the petition on March
11  20, 2012. (Answer, Exs. 3-4.)

12  Petitioner filed a petition to the California Supreme Court on April 2, 2012. The
13  petition was summarily denied on June 13, 2012. (Answer, Exs. 5-6.)

14  Respondent filed an answer to the petition on October 4, 2013. (Answer, ECF No.
15  9.) Petitioner did not file a traverse within thirty days of the service of the answer.
16  Accordingly the matter stands ready for adjudication.

17  **II.**   **DISCUSSION**

18  **A.**   **Jurisdiction**

19  Relief by way of a petition for writ of habeas corpus extends to a person in
20  custody pursuant to the judgment of a state court if the custody is in violation of the
21  Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §
22  2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he
23  suffered a violation of his right to due process as guaranteed by the U.S. Constitution. In
24  addition, Petitioner was custody in Kern County, which is located within the jurisdiction of
25  this court, at the time of filing the present petition. 28 U.S.C. § 2241(d); 2254(a).
26  Accordingly, the Court has jurisdiction over the action.

27  **B.**   **Legal Standard of Review**

28  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

2

1 | Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus
2 | filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,
3 | 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of
4 | the AEDPA; thus, it is governed by its provisions.

5 |        Under AEDPA, an application for a writ of habeas corpus by a person in custody
6 | under a judgment of a state court may be granted only for violations of the Constitution
7 | or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.
8 | 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in
9 | state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.    Contrary to or an Unreasonable Application of Federal Law

       A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

1   (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71

2   (2003). A state court decision will involve an "unreasonable application of "federal law

3   only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-

4   10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court

5   further stresses that "an unreasonable application of federal law is different from an

6   *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S.

7   at 410) (emphasis in original).   "A state court's determination that a claim lacks merit

8   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

9   correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541

10  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

11  have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct.

12  1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal

13  law for a state court to decline to apply a specific legal rule that has not been squarely

14  established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411,

15  1419 (2009) (quoting Richter, 131 S. Ct. at 786).

16  2.   Review of State Decisions

17       "Where there has been one reasoned state judgment rejecting a federal claim,

18  later unexplained orders upholding that judgment or rejecting the claim rest on the same

19  grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

20  "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

21  (9th Cir. 2006). Determining whether a state court's decision resulted from an

22  unreasonable legal or factual conclusion, "does not require that there be an opinion from

23  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

24  "Where a state court's decision is unaccompanied by an explanation, the habeas

25  petitioner's burden still must be met by showing there was no reasonable basis for the

26  state court to deny relief." Id. (" This Court now holds and reconfirms that § 2254(d) does

27  not require a state court to give reasons before its decision can be deemed to have been

28

1   'adjudicated on the merits.").

2          Richter instructs that whether the state court decision is reasoned and explained,

3   or merely a summary denial, the approach to evaluating unreasonableness under §

4   2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

5   or theories supported or, as here, could have supported, the state court's decision; then

6   it must ask whether it is possible fairminded jurists could disagree that those arguments

7   or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

8   Thus, "even a strong case for relief does not mean the state court's contrary conclusion

9   was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves

10  authority to issue the writ in cases where there is no possibility fairminded jurists could

11  disagree that the state court's decision conflicts with this Court's precedents." Id. To put

12  it yet another way:

13          As a condition for obtaining habeas corpus relief from a federal
        court, a state prisoner must show that the state court's ruling on the claim
14      being presented in federal court was so lacking in justification that there
        was an error well understood and comprehended in existing law beyond
15      any possibility for fairminded disagreement.

16  Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts

17  are the principal forum for asserting constitutional challenges to state convictions." Id. at

18  787. It follows from this consideration that § 2254(d) "complements the exhaustion

19  requirement and the doctrine of procedural bar to ensure that state proceedings are the

20  central process, not just a preliminary step for later federal habeas proceedings." Id.

21  (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

22              3.      Prejudicial Impact of Constitutional Error

23          The prejudicial impact of any constitutional error is assessed by asking whether

24  the error had "a substantial and injurious effect or influence in determining the jury's

25  verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

26  U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

27  state court recognized the error and reviewed it for harmlessness). Some constitutional

28

errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002); Musalin v. Lamarque, 555 F.3d at 834.

## IV.  REVIEW OF PETITION

### A.  Law Regarding Due Process at Disciplinary Hearings

The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). While the United States Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. See id. at 557 ("It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior."); id. ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance …."); id. at 558 (holding that "[s]ince prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed").

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff, 418 U.S. at 539. Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556.

1   Thus, a prisoner's due process rights are moderated by the "legitimate institutional

2   needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing

3   Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984)).

4         When a prison disciplinary proceeding may result in the loss of good time credits,

5   due process requires that the prisoner receive: (1) advance written notice of at least 24

6   hours of the disciplinary charges; (2) an opportunity, when consistent with institutional

7   safety and correctional goals, to call witnesses and present documentary evidence in his

8   defense; and (3) a written statement by the fact-finder of the evidence relied on and the

9   reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.

10  Finally, in order to comport with the requirements of due process, the disciplinary

11  decision must be supported by "some evidence." Hill, 472 U.S. at 455.

12        **B.    Analysis**

13              1.    Due Process

14        In the facts and circumstances presented here, Petitioner was not denied due

15  process. Petitioner was charged with possession of contraband, namely a cell phone,

16  and was found guilty of the offense. The Kern County Superior Court described why

17  Petitioner's due process rights were not denied in a reasoned decision, stating:

18              Petitioner, Feaster Foster ("Petitioner"), filed a petition for writ of
        habeas corpus on November 17, 2011 ("petition"). Petitioner complains
19      about a finding of guilt reached in connection with Rules Violation Report,
        Log No. F6-11-04-005, dated April 5, 2011, for Possession of a Cell
20      Phone. It appears from the record that Petitioner's cell-mate (Ferguson)
        claimed at the hearing of Log. No. F6-11-04-005 that the cellular phone
21      belonged to him.

22              A prisoner is entitled to due process at a disciplinary hearing, but
        not the same right as a defendant at a criminal trial. (In re Estrada (1996)
23      47 Cal.App.4th 1688, 1694.) Unlike a guilt finding at a criminal trial, a
        disciplinary finding requires only "some" supporting evidence to satisfy
24      due process concerns.    (Superintendent v. Hill (1985) 472 U.S. 445,
        455-456, italics added; In re Zepeda (2006) 141 Cal.App.4th 1493, 1498.)
25      This standard "does not require examination of the entire record,
        independent assessment of the credibility of the witnesses, or weighing of
26      the evidence. Instead, the relevant question is whether there is any
        evidence in the record that could support the conclusion reached by the
27      disciplinary board." (Superintendent v. Hill, supra, 472 U.S. at pp. 455-
        456.)
28

7

1

2          Here, the Senior Hearing Officer based his finding of guilt upon the
      Reporting Employee's statement confirming that the relevant cell phone
3      was found between the state issued mattress and an egg crate mattress
      located on bunk 610-2-41L. Bunk 610-2-41L is assigned to Petitioner.
4      Similarly, an altered cell phone charger was found laying on the ground
      beneath the same bunk. Furthermore, this court notes that the Reporting
5      Employee stated that in order to access the cell phone, he was required to
      untie the sheet of bed 610-2-41L. Such evidence provides "some"
6      evidence sufficient to support the finding of guilt reached in connection
      [with] Rules Violation Report, Log No. F6-11-04-005. Although Petitioner
7      has requested that it do so, this court declines to reweigh the credibility or
      weight of inmate Ferguson's testimony regarding his
8      possession/ownership of the cell phone.

9          IT IS HEREBY ORDERED, the petition is denied. The petition fails
      to state a prima facie claim for habeas corpus relief. (See, People v.
10     Duvall (1995) 9 cal. 4th 464, 474.)

11    (Answer, Ex. 2.)

12         The reasoning of the state court in denying Petitioner's claims is not an

13    unreasonable determination of Supreme Court law. Petitioner does not claim that he was

14    denied procedural due process in the form of notice of the hearing, the right to present

15    witnesses or evidence, or a written statement of the decision. Instead Petitioner

16    contends that Respondent failed to show that "some evidence" supported the violation.

17    Petitioner specifically contends that he was not asked about the cell phone at the time of

18    the search, that the investigating employee testified at the hearing that he had to untie

19    Petitioner's bed-sheet to access the phone even though the employee did not include

20    those facts in his written report, and that the hearing officer incorrectly found that inmate

21    Ferguson was unable to provide specific information regarding the phone when

22    questioned. (See generally, Pet.) None of the contentions raised by Petitioner creates a

23    colorable question whether there was some evidence that the cell phone was in

24    Petitioner's possession. The phone was found in his bed. The location of the phone

25    creates a strong inference that the phone was in his possession. While the investigating

26    officer might not have included the detail regarding having to untie the bed-sheet to

27    access the phone in his written report, the employee was interviewed by the hearing

28    officer who was provided an opportunity to determine the employee's credibility. With

8

1 regard to Ferguson, it is true that he did claim that the phone was his and provide some

2 answers regarding the phone. However, Ferguson was not able to answer other

3 questions about the phone, such as its phone number. (See ECF No. 1 at 23.)

4   As the cell phone was found in Petitioner's bunk, the hearing officer reasonably

5 inferred that Petitioner possessed the cell phone. Accordingly, the "some evidence"

6 standard has been met. See Hill, 472 U.S. at 455. Therefore, the state court reasonably

7 concluded there was some evidence to uphold the decision of the hearing officer. To the

8 extent Petitioner presents a due process challenge, the claim lacks merit, and the Court

9 recommends the petition be denied.

10     2. Equal Protection

11   Petitioner claims, that he was denied the right to "equal protection of the law" in

12 connection with his prison disciplinary conviction. (See Pet. at 14-16.) Specifically, he

13 alleges that another inmate charged by the same disciplinary officials with possession of

14 a cell phone was not found guilty of the disciplinary violation when, like in his case,

15 another inmate admitted that the cell phone was his.

16   The Equal Protection Clause "embodies a general rule that States must treat like

17 cases alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799,

18 (1997) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982) and Tigner v. Texas, 310 U.S.

19 141, 147 (1940)). The Fourteenth Amendment "guarantees equal laws, not equal

20 results." McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991) (quoting Personnel

21 Adm'r v. Feeney, 442 U.S. 256, 273 (1979)). A habeas petitioner has the burden of

22 alleging facts sufficient to establish "a prima facie case of uneven application."

23 McQueary, 924 F.2d at 835. "[A] mere demonstration of inequality is not enough . . .

24 There must be an allegation of invidiousness or illegitimacy in the statutory scheme

25 before a cognizable claim arises." Id.

26   Petitioner attaches a copy of a rules violation report to his petition in which inmate

27 Williamson was found guilty of possession of a cell phone when he admitted at a

28

1    disciplinary hearing for inmate Nunn that he placed a cell phone on inmate Nunn's bed
2    because it was close to a working outlet. (Pet, Ex. C.) Petitioner did not provide any
3    information regarding whether inmate Nunn was not found guilty of the charge in light of
4    inmate Williamson's confession.

5         Petitioner has failed to demonstrate that any other inmate who was similarly
6    situated to him was treated differently, either in terms of the conducting of a prison
7    disciplinary hearing or in the disciplinary sentence he received. Both inmates were
8    subject to the same inmate discipline rules, even if the results of the discipline hearings
9    might have been different. See McQueary, 924 F.2d at 835. While the facts of each case
10   are similar, the exact facts and determinations of witness credibility of each case are
11   different, and therefore the application of the same rules do not necessarily require the
12   same result. However, of greater importance, even if Petitioner has shown inequitable
13   results, he has not alleged that there is "invidiousness or illegitimacy in the statutory
14   scheme." Id.

15        Although silent, the state courts' rejection of Petitioner's equal protection claim
16   was not contrary to or an unreasonable application of federal law. Accordingly, Petitioner
17   is not entitled to federal habeas relief on that claim.

18   **V.      RECOMMENDATION**

19        Accordingly, the Court RECOMMENDS that the Petition for the writ of habeas
20   corpus be DENIED.

21        This Findings and Recommendation is submitted to the assigned United States
22   District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and
23   Rule 304 of the Local Rules of Practice for the United States District Court, Eastern
24   District of California. Within thirty (30) days after the date of service of this Findings and
25   Recommendation, any party may file written objections with the Court and serve a copy
26   on all parties.  Such a document should be captioned "Objections to Magistrate Judge's
27   Findings and Recommendation."  Replies to the Objections shall be served and filed
28   within  fourteen  (14)  days  after  service  of  the  Objections.  The  Finding  and

1    Recommendation will then be submitted to the District Court for review of the Magistrate

2    Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure

3    to file objections within the specified time may waive the right to appeal the Order of the

4    District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5

6

7

8

9    IT IS SO ORDERED.

10       Dated:   December 13, 2013         /s/ *Michael J. Seng*

11                                          UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28